KIRSCHBAUM v. JASSPON.

1. SALE—FRAUDULENT REPRESENTATIONS—COMMERCIAL REPORTS.
    Plaintiff in replevin makes a case for the jury as to whether
    defendant, to whom he sold the goods replevied, misrepre-
    sented his financial standing in order to obtain credit, where
    he shows that defendant, some 14 months prior to the sale,
    made a report to a commercial agency, on which plaintiff
    relied, representing his assets at $24,000 and his liabilities
    at $9,000, and one year later represented himself to be in
    fully as good financial condition, refusing, however, to make
    a new itemized report, and within five months thereafter
    gave chattel mortgages for $20,000, covering all his property,
    and placed the mortgagees immediately in possession.

2. SAME—EVIDENCE.
    That a tradesman, immediately preceding his failure, purchased
    on credit large and unusual quantities of goods from firms he
    had never dealt with before, is admissible in evidence on the
    question of fraud.

Error to Alpena; Kelley, J.   Submitted January 25,
1899.   Decided March 6, 1899.

Replevin by Simon Kirschbaum and others against
Max Jasspon, Bernard Wolff, George L. Maltz, and
others.   From a judgment for defendants on verdict
directed by the court, plaintiffs bring error.   Reversed.

*Joseph H. Cobb*, for appellants.

*I. S. Canfield* and *J. D. Turnbull*, for appellees.

LONG, J.   Plaintiffs are wholesale clothing merchants
in Philadelphia.   Defendant Jasspon for a number of
years carried on a retail clothing house at Alpena, this
State.   In July and October, 1896, he purchased certain
goods of plaintiffs on credit.   On October 31, 1896, he
gave to defendants Wolff and Maltz a trust mortgage to

secure certain creditors for the sum of $20,889.63. The mortgage covered all the property of defendant Jasspon, and the mortgagees immediately went into possession. Plaintiffs, claiming that Jasspon made certain false and fraudulent representations as to his financial standing to obtain credit for the goods sold to him, and that he had in mind at the time of the purchase the giving of this chattel mortgage, and never intended to pay for the goods, brought replevin, and obtained a portion of them from defendants Wolff and Maltz. On the trial the court directed the verdict in favor of defendants. Plaintiffs bring error. The errors claimed relate to the rulings of the court in refusing to receive certain evidence offered by plaintiffs, and in directing the verdict in favor of defendants.

Plaintiff Kirschbaum's deposition was taken, and read on the trial, from which it appears that plaintiffs sold Jasspon, from July to October, some $700 worth of goods; that in making this sale they relied upon a report made by Jasspon to the R. G. Dun & Co. Mercantile Agency; that the first report, made on June 4, 1895, stated his assets as follows:

| | | |
|---|---:|---:|
| Stock on hand | $9,356 | 13 |
| Bills receivable | 4,730 | 10 |
| Mortgage on farm and lumber outfit | 904 | 44 |
| Accounts receivable | 5,728 | 87 |
| Cash | 512 | 42 |
| Realty | 1,187 | 76 |
| Horses, white pine, and cedar | 1,750 | 00 |
| Total | $24,169 | 72 |
| Bills payable | $5,031 10 | |
| Accounts payable | 3,905 00 | |
| Total | 8,936 | 10 |
| Leaving surplus | $15,233 | 62 |

This report is supplemented by one dated June 6, 1896, in which Jasspon reports himself as in fully as good condition as the year before.

Mr. Michael O'Brien was called as a witness for the plaintiffs, and testified substantially that he represented R. G. Dun & Co. He stated:

"I heard you [counsel for plaintiffs] read the report made by R. G. Dun & Co. on Max Jasspon. Mr. Jasspon verified both of those reports."

On cross-examination the witness stated further:

"I do not know whether Mr. Jasspon ever saw the report after it was made out. Mr. Guerton got the figures from Mr. Jasspon's books, from his statements, inventory, and other books. He took the statement from the books for the first report. The second report was given to me. He refused to make a statement in particular. I had that first report at that time. He did not want to itemize any report. He said he was in just as good shape as he was the year before. His property was not in condition to make it,—it was floating around. I refer to the report in June, 1896."

On redirect examination, the witness stated:

"Mr. Jasspon came to me in the spring of 1896, and made a statement that he had lost his financial standing and credit, and asked me, as a representative of R. G. Dun & Co., to assist him. I cannot fix the date.  *  *  * I told him anything I could do to help him back, I would do. It was then, or about that time, he called me into the back room of his store, and showed me his business, and all connected with it, for the purpose of getting a re-rating. He got a re-rating, and he had a standing.  *  *  *  I had confidence in Jasspon, and thought he told the truth."

It appears, therefore, that in 1896, the year that this credit was extended by plaintiffs, Jasspon stated that he was in just as good standing as he was the year before, and he must have known what that rating was, and what his standing was then. In the year 1895 he was shown by the report to be worth over $15,000, and yet in October, 1896, he made a chattel mortgage to the defendants Wolff and Maltz for $20,889.63, covering all his property, and giving the mortgagees immediate possession of the property. We think there was some testimony to go to the jury on the question of misrepresentation on the part of Mr. Jasspon as to his financial standing.

There was also some testimony in the case which would have warranted the court in submitting to the jury the

question whether Jasspon, in purchasing the goods from plaintiffs, intended to pay for them. He knew the effect of his reputed standing, as shown by the report of 1895. He affirmed that it was as good in 1896 as in 1895. He thus obtained credit. From July 1, 1895, to April 1, 1896, he purchased only $7,000 worth of goods. From April 1, 1896, to October 31, 1896, the date of the trust mortgage to Wolff and Maltz, he purchased $22,500 worth of goods; and when the inventory was taken it was found that the stock on hand was worth only $7,381.80, and the accounts amounted to but $4,306.75. The plaintiffs offered to show that most of the $22,500 worth of goods had been purchased from firms he had never dealt with before. This testimony should have been admitted. Great latitude must be allowed in the examination of witnesses in this class of cases. Fraud in the purchase was charged, and the question whether Jasspon intended to pay for the goods purchased from plaintiffs at the time of purchase could be shown only by facts and circumstances surrounding the whole transaction.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.